```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT BECKLEY
```

**KELLY J. ELKINS,**

    **Plaintiff,**

**v.**                                          **CIVIL ACTION NO. 5:05-0684**

**NATIONWIDE MUTUAL INSURANCE COMPANY,**

    **Defendant.**

<u>**MEMORANDUM OPINION**</u>

Pending before the court is defendant's motion for summary judgment (Doc. No. 12). After reviewing the record and applicable case law, for the reasons discussed below, in an accompanying judgment order, the court grants defendant's motion for summary judgment and orders that this action be removed from the active docket of the court.

**I.  Statement of Facts**

The parties have stipulated to the following facts:

Plaintiff Kelly Elkins was a passenger in her own car on November 3, 2002. Kevin Harrison was in Elkins' vehicle in the southbound lane of Interstate 77 ("I-77") in Raleigh County, West Virginia. Rebecca Lewis was driving her vehicle in the northbound lane of I-77. Lewis' car crossed the median and entered the southbound lane of I-77 where the vehicles collided. Plaintiff brought a claim for damages arising out of this

accident that is currently pending in the Circuit Court of Raleigh County, West Virginia.

Defendant Nationwide Insurance Company ("Nationwide") issued an insurance policy to Rebecca Lewis with liability policy limits of $100,000 per person and $300,000 per occurrence. On December 5, 2002, Nationwide, through its claims representative, informed plaintiff that it had completed its investigation of the accident and that it accepted 90% liability for its policyholder. On June 25, 2003, Nationwide offered to pay the full policy limits of $100,000 to plaintiff, conditioned upon plaintiff executing a full and final release of all claims against Rebecca Lewis, defendant's insured.

On August 27, 2003, plaintiff rejected that offer and offered to execute a partial release in favor of Rebecca Lewis, but only for the first $400,000 of any judgment obtained, in exchange for payment of the policy limits of $100,000. Nationwide maintained its previous position.

On several occasions thereafter, Nationwide offered to pay $100.000, the relevant policy's limits, to plaintiff in exchange for a full and complete release of its insured. Plaintiff has refused to release the insured in exchange for tender of the relevant policy's limits.

Plaintiff instituted this suit on July 6, 2005, in the Circuit Court of Raleigh County against Nationwide alleging

violations of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4 because Nationwide asked plaintiff to execute a full release of plaintiff's claims against Nationwide's insured, Rebecca Lewis, in exchange for tender of the policy limits.

## II.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56 (2003).  The moving party has the burden of establishing that there is no genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-251. Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, Inc., 477 U.S. at 256. Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

There are no genuine issues of material fact before the court. The parties have stipulated to the facts as set forth in defendant's motion for summary judgment. The only question presented in this case is whether, under West Virginia law, defendant acted appropriately in asking plaintiff to execute a full release of its insured prior to tendering its insured's policy limits to plaintiff. (See Doc. No. 13 at 2.) For the reasons outlined below, the court finds that defendant did act appropriately.

West Virginia law imposes certain obligations on insurers in their dealings with third-party claimants. The West Virginia Unfair Trade Practices Act (the "Act"), W. Va. Code

§ 33-11-4(9), regulates the settlement of claims and addresses duties an insurer owes to third parties.  Generally, the Act requires insurance companies to attempt to settle claims where liability has become reasonably clear.  In Jenkins v. J.C. Penney Casualty Insurance Company, 167 W. Va. 597, 280 S.E.2d 252 (1981), the West Virginia Supreme Court of Appeals has recognized a private cause of action by third-party claimants pursuant to the Act.

The West Virginia Supreme Court of Appeals has never addressed the exact question presented in this case.  However, as Judge Keeley noted in her opinion in Gallagher v. Allstate Insurance Company, 74 F. Supp. 2d 652, 656 (N.D. W. Va. 1999), requiring an insurer to settle for policy limits without getting full release for its insured would place the insurance company in a bind.  Under this circumstance, the insurance company would necessarily be exposed to being sued by its insured for having acted in bad faith.  Id.  As Judge Keeley noted, other courts have consistently held that "an insurer's insistence on securing a release of its insureds before settling for policy limits does not constitute bad faith."  Id. at 656-57 (collecting cases from California, Massachusetts, and Montana).

In response, plaintiff contends that the court should not follow Gallagher for two reasons: first, plaintiff contends that Gallagher is factually distinguishable from the case at the bar,

and second, plaintiff contends that a Montana court interpreting a statute reached a conclusion opposite from the Gallagher court. The court finds neither of these arguments persuasive.

First, plaintiff argues that the Gallagher court's "one-size-fits-all" approach fails to do justice given the facts of the case. (See Doc. No. 14 at 4.) Plaintiff notes that in Gallagher, the insured was apparently offered only a partial release in an amount equivalent to its liability coverage. (Id. at 5) (discussing 74 F. Supp. 2d at 653). Here, plaintiff notes that the insured was offered a release of quadruple that of her policy limits, and even though this offer was given, Nationwide felt no need to take this offer to their insured. (Id.) As such, Nationwide's "balancing," instead of helping its insured, made her liable for punitive damages which would be excluded from coverage. (Id.)

Second, plaintiff cites reasoning contained in the Montana Supreme Court case of Watters v. Guaranty National Insurance Company, 3 P.3d 626 (Mont. 2000), as supporting the denial of defendant's motion for summary judgment. (Doc. No. 14 at 5.) Plaintiff notes that in Watters, given a similar statute, the court found that a settlement could be less than a full and complete release where liability resulting from an automobile accident is reasonably clear and where a third-party claimant's

-6-

damages undisputably exceed mandatory minimum policy limits. (Id. at 6) (discussing 3 P.3d at 638).

Even given plaintiff's arguments, the reasoning in Gallagher is sound.  Defendant must accord its insured's interests at least as much respect as its own.  That Montana courts, applying a similar statute have come out a different way given similar facts is not dispositive.  Because of the inherently adversarial relationship between an insurer and a third party claimant, the law does not expect defendant to subordinate its interests, or those of its insured, to parties situated as is plaintiff.  Neither the fact that plaintiff offered to give the insurance company a release for plaintiff up to four times her coverage limit in exchange for tender of her policy limits nor the fact that the insurance company did not communicate this offer to their insured changes this.  As the West Virginia Supreme Court of Appeals noted in Elmore v. State Farm Mutual Automobile Insurance Company, 202 W. Va. 430, 436, 504 S.E.2d 893, 899 (W. Va. 1998),

> The significant duty owed by an insurer to
> the insured certainly forecloses any like
> duty owed by the insurer to a third party who
> is an adversary of the insured.  An insurer
> cannot logically owe a duty of good faith and
> fair dealing to the insured and a fiduciary
> duty to an adversarial third party in the
> same matter.

Therefore, defendant's refusal to tender policy limits in the absence of a full release of its insured cannot form the basis for a third party bad faith claim. Similarly, the court sees no reason to reach a result different than the <u>Gallagher</u> court because the insurance company did not tender plaintiff's offer to their insured. This lack of communication has nothing to do with plaintiff's rights vis-a-vis the insurance company and everything to do with the insurance company's relationship with its insured. As such, defendant's motion for summary judgment must be granted.

### IV. Conclusion

For the reasons outlined above, defendant has no duty arising under West Virginia law to behave in any manner other than it did. As such, in an accompanying judgment order, defendant's motion for summary judgment (Doc. No. 12) is hereby granted.

It is **SO ORDERED** this 10th day of March, 2006.

Enter:

*/s/ David A. Faber*
David A. Faber
Chief Judge